OPINION
Appellant John Freeborn appeals the July 15, 1998 Judgment Entry of the Morgan County Court of Common Pleas, Juvenile Division, which adjudicated appellant a delinquent child, and the August 11, 1998 Judgment Entry which committed appellant to the Department of Youth Services for a period of six months or to age twenty-one years. Appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
This case arises out of a fight between two students at Morgan Local High School in Morgan County, Ohio. On February 19, 1998, appellant and another student, Monty Chapin, were playing a game of pickle ball in physical education class when their verbal bantering escalated into a fist fight. Shortly after the fight began, Chet Piefer, the physical education teacher, approached the two boys and attempted to break up the fight. Mr. Piefer testified he first grabbed each child by the shirt and attempted to pull them apart. At some point, Mr. Piefer grabbed appellant by the arms and pushed him against the bleachers in an effort to keep him separated from Mr. Chapin. Mr. Piefer alleged appellant punched him in the face. As a result of this conduct, Mr. Piefer signed a complaint alleging appellant to be a delinquent child. The complaint alleged a violation of R.C. 2903.13(A), assault, a fifth degree felony if committed by an adult, making a juvenile delinquent pursuant to violation of R.C. 2151.02. The second count alleged disorderly conduct in the vicinity of a school in violation of R.C. 2917.11, a fourth degree misdemeanor if committed by an adult, making a juvenile delinquent in violation of R.C. 2151.02. At a March 25, 1998 arraignment, appellant denied the charges. At the June 22, 1998 adjudication hearing, appellee presented the testimony of Mr. Piefer. Mr. Piefer testified by the time he became aware of the fight, both boys were punching each other with fists and hitting each other with the pickle ball rackets. T at 5. Mr. Piefer yelled for the boys to stop, but when there was no response he felt compelled to physically intervene. He stepped in-between the boys grabbing each of them by the back of their shirt. When Mr. Chapin stopped struggling, Mr. Piefer let him go. However, appellant continued to struggle and Mr. Piefer was forced to push him back into the bleachers to keep him from going after Mr. Chapin. Appellant was kicking and flailing, incidentally striking Mr. Piefer in the process. However, Mr. Piefer testified appellant's behavior changed, and what was once accidental contact became intentional:
 A. Uh, like I say in the process of trying to hold both boys apart because I didn't want to get them back together, you know, I was trying to hold him over here and Monty over here, and he kept flailing away and striking and everything, and finally he turned around and he told me, uh, let him F'n go . . .
Q. OK, who said this?
 A. [Appellant]. And he turned around and punched me right in between the eyes with his fist.
Q. OK, where was Monty at this point?
A. He was on the left hand.
 Q. OK. So he, it's your testimony that [appellant] looked at you and made a statement to you?
A. Oh, yes.
Q. OK, and it was directed at you?
A. More than once.
Q. But the blow in your opinion was directed at you?
A. Oh, no doubt about that.
 Q. What differentiates this between the kicks that you saw earlier?
 A. He said something to me before that. He told me that he was going to do it and then he did it.
 Q. So, in your opinion suffering this blow that it was directed at you?
A. Oh, no doubt in my mind.
* * *
 Q. OK, and once you have him back up against the bleachers with both hands against his chest what did he do?
 A. Uh, he continued with the profanity and it was F'n let me do this, and F'n let me go. You can't touch me, blah, blah, blah. That's when I turned around and found the first student I could see and that was Jonas and I asked him to go to the office and get somebody for me.
 Q. OK, was there any more physical contact between you and John at this point?
 A. After I ascertained that he was going to calm down enough that I could let him go, uh, he uh, uh, he sat down on the bleachers, one of the bleachers was pulled out and he sat down on the bleachers like that. * * *
On cross examination, Mr. Piefer stated appellant said "If you don't let me go I'm going to hit you." T. at 17. After appellant did, in fact, hit Mr. Piefer, Mr. Piefer pushed appellant against the bleachers. Mr. Piefer indicated he "put" appellant against the bleachers only one time and only after appellant hit him. Mr. Piefer prepared a written statement on the day of the incident. During cross examination, Mr. Piefer admitted his written statement contained no reference to appellant's threat to hit him. Mr. Chapin, the other student involved in the altercation, was next to testify. Mr. Chapin stated Mr. Piefer pushed John up against the bleachers more than once. After he had been pushed up against the bleachers, appellant "came up fighting" punching and kicking at Mr. Piefer. T. at 40-41. Mr. Chapin saw appellant land blows to Mr. Piefer's face and stomach. Mr. Chapin testified it was only after Mr. Piefer pushed appellant into the bleachers that appellant began striking Mr. Piefer. However, during cross examination, Mr. Chapin stated he was uncertain when appellant first struck Mr. Piefer. In a July 15, 1998 Judgment Entry, the trial court adjudicated appellant a delinquent child and ordered a pre-dispositional investigation. In an August 11, 1998 Judgment Entry, the trial court committed appellant to the Department of Youth Services for a period of six months or to his twenty-first birthday. It is from these judgment entries appellant prosecutes this appeal, assigning as error the following:
 I. THE JUVENILE COURT ERRED AND/OR ABUSED ITS DISCRETION IN FINDING THE APPELLANT DELINQUENT BECAUSE THE STATE FAILED TO PROVED BEYOND A REASONABLE DOUBT ALL OF THE ESSENTIAL ELEMENTS OF THE CHARGE IN THE COMPLAINT THAT THE APPELLANT KNOWINGLY CAUSED OR ATTEMPTED TO CAUSE PHYSICAL HARM TO A SCHOOL TEACHER.
 II. THE JUVENILE COURT'S IS FINDING THAT THIS APPELLANT WAS DELINQUENT FOR ASSAULTING A SCHOOL TEACHER WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.
 III. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ADJUDICATING THE JUVENILE DELINQUENT FOR COMMITTING A VIOLATION OF REVISED CODE SECTION 2903.13(C)(2)(e) WHEN SUCH STATUTE WAS NOT INTENDED TO APPLY TO SITUATIONS REFLECTED BY THE EVIDENCE IN THIS CASE.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION DURING THE DISPOSITION PHASE BY IMPOSING A SENTENCE UPON THIS APPELLANT WHICH WAS NOT PROPORTIONAL TO THE EVENT WHICH OCCURRED OR THE ALLEGED HARM CAUSED IN THIS CASE.
 I, II
We shall address appellant's first and second assignments of error together. In his first assignment of error, appellant maintains the trial court erred and/or abused its discretion in finding appellee proved each essential element of the charge of assaulting a school teacher beyond a reasonable doubt. In his second assignment of error, appellant maintains the trial court's decision was against the manifest weight of the evidence. We disagree with both contentions. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. In order to prove assault, the State was required to present evidence for each essential element of R.C. 2903.13, which provides in pertinent part:
 (A) No person shall knowingly cause or attempt to cause physical harm to another * * *
 (B) No person shall recklessly cause serious physical harm to another * * *
 (C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), or (3) of this section, assault is a misdemeanor of the first degree.
* * *
 (2) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:
* * *
 (e) The victim of the offense is a school teacher * * * and the offense occurs on school premises * * *
The statute requires an offender act "knowingly" or "recklessly." These terms are defined in R.C. 2901.22(B)(C), which provides in pertinent part: (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 (C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
Appellant makes two arguments in support of his first assignment of error. First appellant maintains any contact he made with Mr. Piefer was accidental and/or incidental, and therefore did not amount to a "knowing" attempt to cause physical harm to a school teacher. Second, appellant maintains the State failed to demonstrate any actual physical harm occurred. These arguments directly correlate to the two ways to commit assault under R.C.2903.13, supra. Subsection (A) prohibits a person from knowingly causing or attempting to cause physical harm to another. Subsection (B) prohibits a person from recklessly causing serious physical harm to another. In applying the definition "knowingly", supra, we find appellant was aware his conduct of drawing back his fist and striking Mr. Piefer in the face would probably cause a certain result, i.e., physical harm to Mr. Piefer. Mr. Piefer testified appellant first told him he was going to hit him and then followed through on that threat. We find the trial court had both sufficient and competent, credible evidence upon which to base its decision appellant violated R.C. 2903.13(C)(2)(e). Because we find there was competent, credible evidence to support the trial court's finding appellant did in fact assault Mr. Piefer under Subsection (A), appellant's second argument as to recklessly causing serious physical harm is moot. Appellant's first and second assignments of error are overruled.
 III
In his third assignment of error, appellant maintains the trial court erred and/or abused its discretion in applying R.C.2903.13(C)(2)(e) when such statute "was not intended to apply to situations reflected by the evidence in this case." We disagree. Essentially, appellant maintains any contact he made with Mr. Piefer was accidental and the statute was not designed to apply to accidental contact between teachers and students. As noted in our discussion of assignments of error one and two, appellant, knowingly attempted to cause physical harm to Mr. Piefer. R.C.2903.13(C)(2)(e) enhances the penalty for assault from a misdemeanor of the first degree to a felony of the fifth degree when a school teacher or official is involved. Mr. Piefer was a teacher, teaching a physical education class during normal school hours at the time of the incident. In light of our disposition of the first and second assignments of error, and in light of the plain language of the statute, we find this assignment of error without merit. Appellant's third assignment of error is overruled.
 IV
In his fourth assignment of error, appellant maintains the trial court abused its discretion in imposing a sentence too harsh for the conduct and harm caused. We disagree. The appropriate standard to review a trial court's imposition of a commitment to the Department of Youth Services is abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. Under the facts and circumstances herein, we find no abuse of discretion in the trial court's disposition of a period of six months or to the age of twenty-one years to the Department of Youth Services.
For this reason, appellant's fourth assignment of error is overruled. The July 15, 1998 and August 11, 1998 Judgment Entries of the Morgan County Court of Common Pleas, Juvenile Division, are affirmed.
By: Hoffman, P.J. Farmer, J. and Edwards, J. concur.